Argued December 4, decided December 16, 1913.

## STATE *v.* NAYLOR.

(136 Pac. 889.)

**Lewdness—Evidence—Comment and Criticism.**

1. In a prosecution for lewd and lascivious cohabitation, the admission of evidence that the conduct of defendant and the woman with whom he associated was the subject of comment and criticism in the community was error.

**Lewdness—Elements of Offense—Sexual Intercourse.**

2. Sexual intercourse is essential to complete the crime of lewd and lascivious cohabitation between a man and woman not married to each other, prohibited by Section 2075, L. O. L.

**Indictment and Information—Joinder of Parties—Lewd and Lascivious Cohabitation.**

3. The parties to the offense of lewd and lascivious cohabitation may be indicted separately.

Lewdness—Indictment—Sufficiency.

4. Under Section 2075, L. O. L., making it an offense for any man and woman, not being married to each other, to lewdly or lasciviously cohabit or associate together, an indictment charging that defendant, not being married with a named female person, did lewdly and lasciviously cohabit with her, is sufficient as against the objection that it does not show that she cohabited with him.

Lewdness—"Cohabitation."

5. "Cohabitation," as used in Section 2075, L. O. L., prohibiting lewd and lascivious cohabitation, means a living together in the same manner as husband and wife.

Lewdness—"Lewd and Lascivious Cohabitation."

6. "Lewd and lascivious cohabitation" means a living together in a state of fornication or adultery.

Lewdness—Burden of Proof—Marriage of Parties.

7. In a prosecution for lewd and lascivious cohabitation, the state is not required to prove that the parties to the offense were not married.

Lewdness—Evidence—Weight and Sufficiency.

8. In a prosecution for lewd and lascivious cohabitation, evidence *held* to sustain a conviction.

[As to what constitutes adultery, see note in 32 Am. Dec. 289. As to what constitutes living in open and notorious adultery, see note in 113 Am. St. Rep. 271.]

From Washington: JAMES U. CAMPBELL. Judge.

Department 1. Statement by MR. CHIEF JUSTICE McBRIDE.

The defendant, Edward L. Naylor, was indicted for the crime of lewd and lascivious cohabitation. The charging part of the indictment is as follows: "That the said defendant, Edward L. Naylor, on the 20th day of November, A. D. 1912, in the county of Washington, State of Oregon, then and there being, and not being then and there intermarried with one Martha Traver, a female person, did then and there willfully and unlawfully, lewdly and lasciviously cohabit and associate with her, the said Martha Traver, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon."

Section 2075, L. O. L., is as follows: "If any man and woman, not being married to each other, shall lewdly or lasciviously cohabit or associate together, such man or woman, upon conviction thereof, shall be punished by imprisonment in the county jail not less than one nor more than six months, or by fine not less than $50 nor more than $300."

There was no demurrer to the indictment. The trial court admitted, over the objection of plaintiff, evidence to the effect that the conduct and manner of living of the defendant and Martha Traver caused comment and criticism in the community.

The defendant's counsel requested the following instructions which were given striking out the words, "and of course implies sexual intercourse." The defendant excepted to the modification of the instruction. The court gave the following instruction to which defendant's counsel excepted:

"A 'cohabitation,' within the meaning of the statute upon which this indictment is based, means the living together of a man and woman as husband and wife; the living together in one house; a boarding or tabling together at a fixed residence or abode, followed by the conduct which naturally arises between man and wife by reason of the marriage relation, and of course implies sexual intercourse."

"Cohabitation does not necessarily imply actual sexual intercourse. So far as this case is concerned, it is such conduct upon the part of the individuals as would naturally lead people to believe that they were having sexual intercourse; that is, would make people believe that they were living together as man and wife, with everything that the marriage relation implies."

The jury returned a verdict of guilty, and from a judgment on that verdict the defendant appeals.

REVERSED.

For appellant there was a brief over the name of *Messrs. Bagley & Hare,* with an oral argument by *Mr. George R. Bagley.*

For the State there was a brief over the names of *Mr. Edmund B. Tongue* and *Mr. Thomas H. Tongue, Jr.,* with an oral argument by *Mr. Edmund B. Tongue.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1. The first error assigned in the appellant's brief was the admission by the court of evidence tending to show that the conduct of defendant and Miss Traver was the subject of comment and criticism in the community. The learned district attorney has cited to us no case, and we have been unable to find one, which holds evidence of this character to be admissible. It is plausibly argued that, as the gist of the offense is its tendency to cause scandal and corrupt public morals, the fact that scandal was caused may be proved as a substantive fact in the case. This would be a dangerous doctrine to ingraft upon the law. The question is not whether defendant's conduct was commented upon by a few or even many people, but was it such as in the mind of a reasonable man would tend to cause scandal and tend to induce the belief in the minds of reasonable people that the relations between the parties were meretricious. Any other rule would substitute hearsay and the opinion of some members of the community for that testimony as to the facts which the law always requires. The authorities support this view: 2 McClain, Crim. Law, § 1135; *Belcher* v. *State,* 27 Tenn. (8 Humph.) 63; *Buttram* v. *State,* 44 Tenn. (4 Cold.) 171. The admission of this testimony was error.

2. We are of the opinion that the modification of the instruction requested by the defendant was error.

The great weight of authority is to the effect that there must be evidence of sexual intercourse between the parties in order to complete the offense: *Luster* v. *State*, 23 Fla. 339 (2 South. 690); *State* v. *Marvin*, 12 Iowa, 499; *Commonwealth* v. *Calef*, 10 Mass. 153; *Jones* v. *Commonwealth*, 80 Va. 18; *Pruner* v. *Commonwealth*, 82 Va. 115; *State* v. *Miller*, 42 W. Va. 215 (24 S. E. 882); *Pinson* v. *State*, 28 Fla. 735 (9 South. 706); *Searls* v. *People*, 13 Ill. 597; *Sullivan* v. *State*, 32 Ark. 187; *Lyerly* v. *State*, 36 Ark. 39; *Kinard* v. *State*, 57 Miss. 132.

The cases cited by the district attorney in opposition to this view arise under different statutes, and are therefore not in point. Thus, in the case of *Cannon* v. *United States*, 116 U. S. 67 (29 L. Ed. 561, 6 Sup. Ct. Rep. 278), the statute provided that a man should not "cohabit with more than one woman"; the object of the statute being to prevent polygamous households in the territory of Utah. The words "lewd and lascivious" found in our statute do not occur in that act. It was sufficient that a man should dwell and abide with more than one woman, and what was said by the court in that case must be considered with reference to the statute there discussed.

In the case of *State* v. *Chandler*, 96 Ind. 591, the statute made it criminal for persons not married to each other to cohabit with each other in a state of adultery or fornication. The indictment charged that the persons named "not being married to each other did then and there unlawfully live and cohabit together as man and wife." The objection to the indictment was that there was no allegation that the defendants cohabited together in a state of adultery and fornication and that therefore the indictment was not within the statute. The court held that the allegation that they lived and cohabited together as man and wife necessarily included a charge that they cohabited

together in a state of fornication or adultery and that the indictment was sufficient. In *Cox* v. *State,* 136 Ala. 94 (34 South. 168, 41 L. R. A. 760), the defendant was indicted upon a statute similar to that in *Cannon* v. *United States,* 116 U. S. 67 (29 L. Ed. 561, 6 Sup. Ct. Rep. 278), which made cohabitation with a second wife a crime, but which did not contain the words "lewd and lascivious." The holding was the same as in the Cannon case and upon the same reasoning. The case of *In re Watson,* 19 R. I. 342 (33 Atl. 873), arose upon a similar statute to the ones cited in the cases of *Cannon* v. *United States,* 116 U. S. 67 (29 L. Ed. 561, 6 Sup. Ct. Rep. 278) and *Cox* v. *State,* 136 Ala. 94 (34 South. 168, 41 L. R. A. 760), and therefore has no application to the statute of this state now under consideration. The same may be said of *Taylor* v. *State,* 36 Ark. 84, and of *United States* v. *Higgerson* (C. C.), 46 Fed. 750, which was another prosecution under the Edmund's act, discussed in *Cannon* v. *United States,* 116 U. S. 67 (29 L. Ed. 561, 6 Sup. Ct. Rep. 278). These cases, unless closely examined with reference to the particular statutes under which they occurred, are liable to be misleading and, no doubt, in the hurry incident to the trial, did mislead the learned circuit judge at this trial in the court below.

3. The objection that the indictment does not state facts sufficient to constitute a crime is not well taken. Waiving for the purposes of this trial the question as to whether the crime is a joint or several offense and that both must concur in the act and in the intent in order to consummate it, the authorities are clear that the parties may be indicted separately: McClain, Crim. Law, § 1131.

4–6. The indictment charges that the defendant unlawfully, lewdly, and lasciviously cohabited and associated with Martha Traver and that he and Martha

were not married. "Cohabitation," as used in the statute, means a living together in the same manner as husband and wife. "Lewd and lascivious cohabitation" means a living together in a state of fornication or adultery, and, while it would have been better perhaps to have followed the words of the statute, we think the language used is sufficient where no objection to the form of the indictment was raised by demurrer or upon the trial. It is difficult to see how defendant could cohabit with Martha without Martha cohabiting with him. But there is good ground for holding, and there is authority to the effect, that in a statute like ours a joint immoral intent is not necessary if there is a joint concurrence in the physical acts necessary to constitute it: *State v. Cutshall*, 109 N. C. 764 (14 S. E. 107, 26 Am. St. Rep. 599). This question, however, does not necessarily arise in the case at bar.

7. It is also urged that it was necessary for the state to prove that defendant and Miss Traver were not married, but such is not the law in cases of this character: McClain, Crim. Law, § 1132; *State v. McDuffie*, 107 N. C. 885 (12 S. E. 83); *United States v. Higgerson* (C. C.), 46 Fed. 751; *People v. Colton*, 2 Utah, 457.

8. It is argued that there is not sufficient evidence to justify the verdict, but in our judgment it was sufficient to indicate an open meretricious association between the parties, and to have upheld the verdict had the case been in other respects free from error. When an unmarried man and a girl are so infatuated with each other's society that they are willing to defy public opinion and the natural comment that would arise from such conduct and live for a year and a half alone with each other in a small house of three rooms, eat there, sleep there, and generally conduct themselves, so far as outside appearances go, as husband

68 Or.—10

and wife, when the man is found in bed and the woman in the same room in her nightclothes, with her corset and clothes hanging on a chair near the bed, when the girl tags around and camps with him at state fairs and is constantly in his society, the average normal man who knows human nature and the normal strength of human passion will naturally come to the conclusion that these open demonstrations are accompanied by secret and continuous fornication unless one or the other of the parties is incapable of the sexual act. The jury had the parties before them and were fully able to judge whether they were physically capable of following the natural impulses of natures, so callous to public opinion as theirs seemed to be, or whether the man was a Saint Anthony and the woman a walking iceberg which passion was incapable of thawing. There need not be direct evidence of sexual intercourse between the parties, if circumstances satisfy the jury beyond a reasonable doubt that it habitually occurred. It is seldom that fornication, which is a crime of secrecy, can be proved by direct evidence, and if the state can satisfy the jury beyond a reasonable doubt that in the natural and normal course of things it must have occurred in this instance, that is all that is required.

The judgment is reversed and the cause remanded, with directions to grant a new trial.          REVERSED.

MR. JUSTICE MOORE and MR. JUSTICE RAMSEY concur.
MR. JUSTICE BURNETT concurs in the result.