Argued April 28, affirmed June 21, 1976

In the Matter of the Marriage of
WHITLOW, *Appellant,*
*and*
WHITLOW, *Respondent.*
(No. 35962, CA 5509)
550 P2d 1404

*Kurt Carstens,* Newport, argued the cause for appellant. With him on the brief were Litchfield, MacPherson & Carstens, Newport.

*Thomas E. Wurtz,* Springfield, argued the cause for respondent. With him on the brief were Moore, Wurtz & Logan, Springfield.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

FORT, J.

**FORT, J.**

In this dissolution case the trial court awarded custody of the parties' four and one-half year old daughter to the wife, ordered the husband to pay $50 per month child support, and ordered the proceeds of the sale of the parties' house divided evenly between them. On appeal the husband contests all three decisions.

The parties separated because of the wife's affair with a man in Georgia where they were living while the husband was in the army. At the time of the separation in July 1975 the parties agreed that the child would live temporarily with the husband's parents in Siletz, Oregon. They also signed a written separation agreement drawn up by the husband's attorney stating their intent to obtain a divorce in Georgia and granting custody of the daughter to the husband.

Since then, the husband filed for a dissolution in Oregon, although he was still in Georgia with the army. The wife's affair ended, she was laid off from her nursing job in Georgia, and at the time of the hearing she was living with her mother in Vancouver, Washington, and working on the night shift as a hospital nurse there. The child lived with the husband's sister for three months. The husband then took the child back to Georgia three weeks before the divorce hearing.

In granting custody to the wife, the trial court did not adopt the separation agreement. In deciding a custody question the trial court is not bound by such an agreement; in determining how much weight to give it the court should consider the circumstances under which it was made. *Rorer v. Rorer,* 10 Or App 479, 486, 500 P2d 734 (1972). This agreement was signed within a few days of the parties' decision to separate and at a time of emotional turmoil. The wife did not have assistance of counsel and testified that the husband threatened to take the daughter away from her if she did not sign the agreement. The husband denied such threat.

■ This is a case in which it appears that either party would be a fit parent for the daughter. The wife's single brief affair does not establish her as an unfit parent. *Hogan v. Hogan,* 6 Or App 122, 486 P2d 1309 (1971); *Goode v. Goode,* 4 Or App 34, 476 P2d 805 (1970). In *Hogan* we said:

> "Although the record reflects that it was defendant's marital misconduct that was the immediate cause of the breakup of the marriage, this does not permanently disqualify a mother from being awarded custody. [Citations omitted.]" 6 Or App at 127.

There was no evidence that the affair itself had a detrimental effect on the child. Both parents appear to be interested in the child and her welfare. The child has evidently spent more time with the wife since the husband was in Korea for six months or more in 1973-74.

■ In this type of situation we rely heavily on the judgment of the trial judge who was able to see the parties and judge their maturity and quality as parents along with their interests in the child:

> "* * * In the difficult and delicate task of attempting to determine where the welfare of children lies as between conflicting claims of warring parents, the judge who sees the parties and their witnesses and listens to their testimony has a position of advantage over the justices of this court. This axiom of appellate court review, so often referred to in equity suits, is of prime importance in its application to a child custody case which involved, as does this one, an appraisal of the character, temperament, and disposition of the contending parents, some of the determining marks of which may reveal themselves to one who sees and observes the persons concerned but are not to be found in the typewritten pages of a cold record. The decision of the trial judge in such a case is, therefore, not to be lightly set aside." *Bennehoff v. Bennehoff,* 209 Or 224, 225-26, 304 P2d 1079 (1956).

The trial judge properly considered the factors listed in *Tingen v. Tingen,* 251 Or 458, 446 P2d 185 (1968),

along with other cases in reaching his decision. We affirm his award of custody.

The husband contends that the trial judge misunderstood the amount of the wife's income in determining that he should make child support payments, and also that the wife did not demonstrate a need for those payments. In issuing its decision the trial court said that the incomes of each spouse were approximately equal, which statement is supported by the record. The court also said that $50 per month was "almost inordinately small" but set that figure because the parties' incomes were approximately equal. Both parents have an equal duty to support their children. ORS 109.010; *Waymire and Waymire,* 17 Or App 562, 563, 522 P2d 1394 (1974). The husband testified that if custody were granted to him the wife should help support the child. We agree and hold that he should assist since the wife has custody. Under the circumstances $50 per month is a small but not unreasonable amount to pay in child support from net monthly income of $725, or more if the husband received his expected raise.

The husband also contends that since he and his family made greater financial contributions than had the wife and her family to the Portland house in which the parties had lived before moving to Georgia, he should receive more than half the proceeds from its sale. It appears from the record that the equity of the parties in the house is about $3,500, and that this is the only significant property the couple had. The record is not entirely clear on the contributions made by each family, but it appears that most of the contribution of the husband's family was in labor in fixing up the house. The wife testified that she was working and contributed to the family income from which household expenses were paid. Under the circumstances we find that an equal division of the net proceeds from the sale of the house is reasonable.

Affirmed.